**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SONIA CORCHADO**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**UPWARD HEALTH, INC.,** a Delaware corporation,<br><br>*Defendant*. | Case No. :<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

1. Plaintiff Sonia Corchado ("Corchado" or "Plaintiff") brings this class action complaint against Defendant Upward Health, Inc. ("Upward Health" or "Defendant") to obtain redress for, and put an end to, Defendant's serial violations for the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA" or "Act"), specifically its failure to provide applicants and employees with FCRA-compliant notices and an opportunity to respond prior to undertaking adverse action against them based in whole or in part on the results of a consumer report procured by Upward Health. Plaintiff, for her class action complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**NATURE OF THE ACTION**

2. The FCRA was enacted to promote the accuracy, fairness, and privacy of consumer information contained in the files of consumer reporting agencies. The FCRA explicitly acts to protect job applicants and existing employees from having adverse employment

1

action taken against them as a result of potentially inaccurate or immaterial information. To that end, employers who seek to obtain and use consumer reports regarding their job applicants and employees are required to: (1) provide a standalone disclosure for the background check prior to obtaining any consumer reports in the first place, (2) obtain an applicant's or employee's authorization to procure the consumer report, and (3) provide copies of the reports obtained and a summary of rights under the Act **prior** to taking any adverse employment action against the applicants/employees based on any information contained in such reports.

3. Here, Upward Health willfully violates the FCRA by failing to provide its applicants and employees with copies of the relevant consumer reports and summaries of their FCRA rights before taking adverse action against them.

4. Rather, Upward Health simply skips this step entirely. That is, Defendant takes adverse action against applicants and employees without providing a copy of the consumer report procured about them or a description of their rights as required by Section 1681b(b)(3)(A). As such, Defendant serially violates the FCRA.

5. As a result of Defendant's willful violations of the FCRA, applicants and employees such as Plaintiff Corchado are deprived of rights, including privacy rights guaranteed to them by federal law, and are thus entitled to statutory damages of at least $100 and not more than $1,000 for each violation, plus punitive damages, attorneys fees, and costs. See 15 U.S.C. § 1681n(a)(1)(A).

**JURISDICTION**

6. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the FCRA, which is a federal statute. The Court also has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), *et seq.*

because, on information and belief, there are over 100 class members, there is minimal diversity, and there is over $5,000,000 at issue when the claims of the Class are aggregated. Further, none of the exceptions to CAFA apply.

7. This Court has personal jurisdiction over Defendant because it conducts business in this district, is headquartered and resides in this district, and the unlawful conduct alleged in the Complaint emanated from this District.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant is headquartered in this District, and because a substantial part of the events or omissions and standardized corporate practices giving rise to the claims at issue occurred in and/or emanated from this District.

## PARTIES

9. Plaintiff Sonia Corchado is a natural person and resident of Los Banos, Merced County, California.

10. Defendant Upward Health, Inc. is a Delaware corporation with its principal place of business located at 80 Arkay Drive, Hauppauge, NY 11788.

## FACTUAL BACKGROUND

11. Defendant Upward Health is a corporation that provides in-home medical care and services.

12. In December 2023, Plaintiff applied for a job with Upward Health to work as a Community Outreach Specialist.

13. Shortly thereafter, Plaintiff interviewed and was extended an offer of employment on January 9, 2024. (*See* "Offer Letter," attached hereto as Exhibit A.")

14. Also on January 9, 2024, Upward Health ordered a background check consumer

report about Corchado from its background check vendor, VICTIG. The report ordered was the "Upward Health Standard Package". (*See* "Report Results, attached hereto as Exhibit B.")

15. On January 22, 2024, VICTIG's report was completed and transmitted to Upward Health. (*See* Ex. B.)

16. At 9:36 a.m. MST on January 22, 2024 (so the same date that the report was completed), VICTIG sent Corchado an "Adverse Action (Employment Withdrawal of Offer)" letter, which stated that the decision to rescind the offer of employment was "based in whole or part on the information provided to use in a Consumer Report or Investigative Consumer Report". (*See* "Adverse Action Notice," attached as Exhibit C; *see also* Ex. B.)

17. Though the adverse action notice states that Corchado "also received a copy of your consumer report and a summary of your rights under the Fair Credit Reporting Act," this is inaccurate. Corchado never received such documents, certainly not before the adverse action notice was sent. Indeed, Upward Health's own documents show that nothing was sent to her before the "Adverse Action (Employment Withdrawal of Offer)" on January 22, 2024 at 9:36 a.m. MST. (See Ex. B.) Moreover, when Corchado's Counsel requested a copy of the pre-adverse action notice as part of the pre-suit investigation, Upward Health had no such document to provide. Simply put, Upward Health did not send a pre-adverse notice with a copy of the report and a summary of rights, as required by the FCRA.

18. Upward Health notified Plaintiff that she was being denied employment based on the contents of her background check that Upward Health had procured about her. No notice was provided before that time granting Plaintiff the ability to see a copy of the report or a summary of her FCRA rights or to discuss the negative information with Defendant.

19. As the FTC has made clear, applicants and employees are to be afforded the

4

opportunity to review any background check/consumer report that an employer who is considering taking adverse action has procured and to discuss it with the employer before losing out on a job (or having other adverse action taken) because of information contained in the report. The FTC has stated repeatedly that in general an employer should wait at least five (5) business days following the notice to the applicant or employee of the anticipated adverse action—together with a copy of the report and a summary of the applicant/employees' FCRA rights—before actually taking the adverse action. *See* Weisberg, FTC Staff Op. Letter (June 27, 1997); *see also Beverly v. Wal-Mart Stores, Inc.,* U.S. Dist. LEXIS 2266 (E.D. Va. Jan. 11, 2008) (holding that a reasonable jury could find that adverse action was taken too quickly when the pre-adverse action notice was mailed on September 1st and the adverse action notice was sent on September 6th, where September 5th was Labor Day).

20. Here, Upward Health didn't send the required documents at all, much less five (5) days before the adverse action. Instead, it took the adverse action almost immediately after receiving the results of Corchado's consumer report, and when Corchado contacted her recruiter with Upward Heath about how to view the report, the recruiter simply told her to contact the background check company.

21. Simply put, Defendant, by refusing to provide any Pre-Adverse Action notice at all, fails to give applicants any opportunity to discuss the report and any inaccuracies with it prior to taking adverse action. And then even after being contacted by Corchado, Upward Health simply pointed her in the direction of the background check company itself.

22. As a result of Defendant's willful violations of the FCRA, employees and applicants, such as Plaintiff, are deprived of rights, including privacy rights guaranteed to them by federal law, and are thus entitled to statutory damages of at least $100 and not more than

$1,000 for each violation, plus punitive damages, attorneys' fees, and costs. *See* 15 U.S.C. § 1681n(a)(1)(A).

## CLASS ACTION ALLEGATIONS

23. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure Rule 23(b)(3) on behalf of herself and a Class defined as follows:

> **Adverse Action Class**: All persons in the United States who (1) were subject to adverse employment action from a date two years prior to the filing of this complaint to the date notice is sent to the Class based in whole or in part on any consumer report procured by Upward Health, and (2) who, like Plaintiff, were not provided with any pre-adverse action notice together with a copy of the report and a summary of rights under the FCRA, or who were provided a pre-adverse action notice less than five (5) days before adverse action was taken.

24. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, contractors, and any entity in which the Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assignees of any such excluded persons. Plaintiff anticipates the need to amend the class definitions following a period of appropriate class-based discovery.

25. **Numerosity:** The exact numbers of members within the Class are unknown and not available to Plaintiff at this time, but individual joinder is impracticable. On information and belief, Defendant has hundreds of employees and an even greater number of job applicants. The number of class members can readily be ascertained through the Defendant's records or the records of any third party it retained to perform the background checks at issue.

26. **Typicality:** As a result of Defendant's uniform hiring conduct, Plaintiff and the class members suffered the same injury and similar damages. And Upward Health has no defenses unique to Plaintiff. Thus, Plaintiff's claims are typical of the claims of the other class members.

27. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions, including class actions under the FCRA. Neither Plaintiff nor her counsel has any interest in conflict with or antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

28. **Commonality:** There are questions of law and fact common to the claims of Plaintiff and the Class, and those questions will drive the litigation and predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   a. Whether Defendant's conduct described herein violated the FCRA;
   b. Whether Defendant has procured or caused to be procured consumer reports about job applicants and employees;
   c. Whether Defendant's failure to provide pre-adverse action notice violates the FCRA;
   d. Whether Defendant has acted willfully; and
   e. The proper measure of statutory and/or punitive damages.

29. **Predominance:** The common questions of law and fact set forth above go to the very heart of the controversy and predominate over any supposed individualized questions. Irrespective of any given class member's situation, the answers to whether Defendant's failure to

provide any pre-adverse action notices are unlawful is the same for everyone—a resounding "yes" for each question—and they will be proven using common evidence.

30. **Superiority & Manageability:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. It would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a certified class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured. Also, there are no pending governmental actions against Defendant for the same conduct.

## CAUSE OF ACTION
### Violation of 15 U.S.C. § 1681b(b)(3)
### (On Behalf of Plaintiff and the Adverse Action Class)

31. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

32. The FCRA provides that:

(3) Conditions on use for adverse actions.

(A) In General. Except as provided in subparagraph (b), in using a consumer report for employment purposes, *before* taking any adverse action based in whole or in part on report, the person intending to take such adverse action shall provide to the

>   consumer to whom the report relates—
>
>   (i)   A copy of the report; and
>
>   (ii)  A description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title.

*See* 15 U.S.C. 1681b(b)(3) (Emphasis added).

33.  The FCRA defines adverse action as "denial of employment or any other decision for employment purposes that adversely affects any current of prospective employee." 15 U.S.C. § 161a(k)(1)(B)(ii).

34.  In construing the FCRA, the FTC made clear, applicants and employees are to be afforded the opportunity to review the background check/consumer report and to discuss it with the employer before losing out on a job (or having other adverse action taken against them) because of information contained in the report. The FTC has repeatedly stated that in general an employer should wait at least five (5) days following the notice to the applicant or employee of the anticipated adverse action—together with a copy of the report and a summary of the applicant/employees' FCRA rights—before actually taking the adverse action. This notice advises the applicant or employee of the ability to discuss the report with their employer. (*See, e.g.*, FTC Advisory Opinion to Weisberg, available at http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-weisberg-06-27-97.)

35.  After obtaining a consumer report about Plaintiff for employment purposes, Defendant—based in whole or in part on information contained in Plaintiff's consumer report—revoked Plaintiff's offer of employment, an adverse employment action.

36.  Defendant violated Section 1681b(b)(3)(A) of FCRA by failing to provide Plaintiff and members of the Adverse Action Class with any pre-adverse action notice. That is, Defendant informed Plaintiff that she was being denied employment without providing the pre-adverse action notice, copy of the report, and summary of rights. Rather, Defendant "shoots first" and simply terminates while skipping the pre-adverse action step entirely. Without providing a pre-adverse notice, Defendant robs applicants and employees of any meaningful chance to discuss any aspect of their consumer reports with Defendant prior to decision to take

9

adverse action against him, as intended by the FCRA.

37. Defendant's violations of 15 U.S.C. § 1681b(b)(3)(A) were willful. The rule that employers must give applicants and employees an opportunity to remedy any discrepancies with their consumer reports directly with the employer is well established. Defendant is a large real estate company that regularly engages counsel—it has ample means and opportunity to seek legal advice regarding their FCRA responsibilities. Further, there is a glut of judicial and administrative guidance—dating back to 1990's—regarding a company's FCRA responsibilities. As a consequence of such readily available guidance, Defendant was either aware of its responsibilities or should have been aware of its responsibilities but violated the FCRA anyway.

38. Plaintiff and Adverse Action Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each of Defendant's willful violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

39. Accordingly, under the FCRA, Plaintiff and Adverse Action Class seek statutory damages, punitive damages as appropriate, reasonable cost and attorneys' fees, and such other relief as the Court deems necessary, reasonable, and just.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Sonia Corchado, individually and on behalf of the Class, prays for the following relief:

    A.    An order certifying the Class as defined above, appointing Plaintiff as the representative of the Class, and appointing her counsel as Class Counsel;

    B.    Awarding damages, including statutory damages where applicable, to Plaintiff and the Class in amounts to be determined at trial;

    C.    Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

    D.    Awarding Plaintiff and the Class pre- and post- judgment interest, to the extent allowable; and

    E.    Such further and other relief as the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

                                  Respectfully Submitted,

                                  **SONIA CORCHADO**, individually and on behalf of all of similarly-situated individuals,

Dated: May 9, 2025                By: ___/s/ Shawn Kassman_____
                                                    One of Plaintiff's Attorneys

                                  Shawn Kassman
                                  shawnkassman@centralisliplawyer.com
                                  Law Office of Shawn Kassman, Esq. PC
                                  83 Carleton Avenue
                                  Central Islip, New York 11722
                                  Tel: 631-232-9479
                                  Fax: 631-232-9489

                                  Patrick H. Peluso*
                                  ppeluso@pelusolawfirm.com
                                  Peluso Law, LLC
                                  865 Albion St., Suite 250
                                  Denver, Colorado 80220
                                  Tel: (720) 805-2008

                                  *Counsel for Plaintiff and the Putative Class*

                                  *Motions for admission pro hac vice to be filed